UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SEAN M. O'CONNOR,

                           Plaintiff,

           v.

COMMISSIONER OF SOCIAL SECURITY,

                           Defendant.
_____

DECISION AND ORDER

17-CV-6826L

       Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. § 405(g) to review the Commissioner's final determination.

       On September 23, 2015, plaintiff, then forty-four years old, filed an application for Supplemental Security Income benefits, alleging an inability to work since January 1, 2012. (Administrative Transcript, Dkt. #8 at 28). His application was initially denied. Plaintiff requested a hearing, which was held on June 27, 2016 before Administrative Law Judge ("ALJ") John P. Costello. The ALJ issued a decision on July 28, 2016, concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #8 at 28-38). That decision became the final decision of the Commissioner when the Appeals Council denied review on October 10, 2017. (Dkt. #8 at 1-3). Plaintiff now appeals from that decision.

       The plaintiff has moved (Dkt. #11) for judgment remanding the matter, and the Commissioner has cross moved (Dkt. #15) for judgment on the pleadings affirming the Commissioner's decision, pursuant to Fed. R. Civ. Proc. 12(c). For the reasons set forth below,

the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled will be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ summarized plaintiff's medical records, chiefly related to his treatment for anxiety disorder, depressive disorder, substance abuse disorder in remission, post-traumatic stress disorder, antisocial personality disorder, and attention deficit hyperactivity disorder, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #8 at 30). I believe the evidence supports the ALJ's findings concerning the nature and extent of plaintiff's resulting limitations, and that his conclusion that the plaintiff – at the time of his alleged onset date a 41-year-old man with a high school education and past relevant work as a drywall installer, finisher and acoustical carpenter – was not disabled, was supported by substantial evidence and contained no legal error.

On appeal, plaintiff contends that the ALJ failed to properly weigh the opinion of his treating therapist, and/or failed to sufficiently explain the weight given to the opinions of record.

When assessing nonexertional limitations, in addition to the usual five-step analysis, the regulations "require application of a 'special technique' at the second and third steps of the

five-step framework." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). If the claimant is found to have a medically determinable mental impairment, the ALJ must assess the claimant's degree of resulting limitations in four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) episodes of decompensation. 20 CFR §404.1520a(c)(3). If and how the analysis proceeds from that point depends upon the degree of impairment found. However, the ALJ must document his analysis, and his written decision must "reflect application of the technique, and . . . 'include a specific finding as to the degree of limitation in each of the [four] functional areas.'" *Kohler*, 546 F.3d 260 at 266 (quoting 20 CFR §404.1520a(e)(2)).

Here, the ALJ found that the plaintiff was mildly restricted in activities of daily living, moderately restricted in social functioning, moderately restricted with regard to concentration, persistence and pace, and had experienced no episodes of decompensation. He determined that plaintiff had the residual functional capacity ("RFC") to perform work at all exertional levels, but with the following nonexertional limitations: plaintiff is limited to low stress work involving only occasional decision making, can perform only simple, routine tasks, and can have only occasional contact with coworkers and no interaction with the general public. When presented with this RFC at the hearing, vocational expert Peter A. Manzi testified that a person with this RFC can perform the representative unskilled positions of hand packager and furniture cleaner. (Dkt. #8 at 37).

Initially, plaintiff argues that the ALJ's RFC determination was not supported by substantial evidence, and/or that the ALJ failed to sufficiently explain how his RFC finding was supported by substantial evidence. Plaintiff argues that the ALJ inappropriately gave more weight to the opinions of sources which were non-treating and/or stale (for example, assigning "some" weight to an opinion by consulting psychologist Dr. Christine Ransom, rendered two years prior

to plaintiff's application date), while giving only "little" weight to the opinions of licensed master social worker Joseph DelVecchio, plaintiff's treating therapist, which were authored during the relevant period. Plaintiff also contends that although the ALJ purported to give "significant" weight to the opinion of consulting psychologist Dr. Kristina Luna concerning plaintiff's limitations in relating adequately with others, the ALJ failed to fully incorporate that opinion into his RFC finding, because although he specified limitations on interacting with coworkers and the general public, he included no limitations on interacting with supervisors.

The Court is not convinced. While the ALJ did not engage in a piece-by-piece breakdown of each and every aspect of the opinions he reviewed, and did not specify his reasoning for assigning different levels of limitation with respect to plantiff's ability to interact with coworkers (occasional), the general public (never) and supervisors (unlimited), the ALJ's opinion nonetheless furnishes sufficient explanation of the basis for his conclusions that plaintiff's non-exertional limitations are no more than moderate, and that plaintiff retains the RFC to perform work existing in significant numbers in the national economy. *See generally Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (failure to explicitly engage in a function-by-function analysis in assessing a claimant's RFC is not a per se error requiring remand: the "relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence").

With respect to the ALJ's decision to give Mr. DelVecchio's opinions "little" weight, the Court observes that mental health counselors like Mr. DelVecchio are "not an acceptable treating source as defined by the Commissioner." *Esteves v. Barnhart*, 492 F. Supp. 2d 275, 281 (W.D.N.Y. 2007). Rather, they are considered "'other sources' whose opinions will be considered to evaluate the severity of [an] impairment[] and how it affects [a claimant's] ability to work."

*Acevedo v. Astrue*, 2012 U.S. Dist. LEXIS 125226 at *36 (S.D.N.Y. 2012) (quoting 20 C.F.R. §404.1513(d)). As such, an ALJ may reject the opinion of a mental health counselor where, for example, it is inconsistent with the claimant's treatment records and/or other substantial evidence of record. *See Bulavinetz v. Astrue*, 663 F. Supp. 2d 208, 212 (W.D.N.Y. 2009). Here, the ALJ observed that Mr. DelVecchio's employability assessments, which described marked limitations (defined as unable to function 25% or more of the time) in maintaining attention and concentration, performing tasks independently and following simple instructions, and moderate limitations (defined as unable to function 10-25% of the time) maintaining a schedule, maintaining proper hygiene and grooming, and performing low stress work, were inconsistent with plaintiff's contemporaneous treatment records. (Dkt. #8 at 33-34, 452-55, 456-59, 460-63). Specifically, "claimant continued to see Mr. DelVecchio faithfully [from February 2014] through 2015" with no apparent difficulties in schedule-keeping, and his mental health status was consistently noted as stable and unchanged, although the treatment note comments do appear to reflect some mild longitudinal improvement with respect to familial relationships, positive self-calming behaviors, interpersonal engagement via the AA program, and involvement in outdoor activities. (Dkt. #8 at 33-34, 243-321, 331-401, 482-98). Plaintiff is also consistently described by treating and consulting sources – even when anxious, depressed or angry – as pleasant and well-groomed. (Dkt. #8 at 249-50, 325).

In addition to discussing each medical source opinion and treating source opinion in detail, the ALJ's decision also takes note of plaintiff's activities of daily living (playing sports, mountain biking, performing simple chores, assisting with parenting obligations and attending frequent AA meetings, sometimes as the meeting's speaker or chairperson), as well as plaintiff's engagement in some work (e.g., Dkt. #8 at 493, April 6, 2016: "[c]lient was excited and in a good mood,

because he was been working hanging dry wall for the past 2 weeks . . . almost 10 hours a day"). These facts likewise run counter to Mr. DelVecchio's opinions. Overall, the inconsistencies between plaintiff's daily activities and Mr. DelVecchio's treatment notes for plaintiff (which contain no indications of greater-than-moderate psychological limitations), and Mr. DelVecchio's employability assessments describing marked limitations, furnished sufficient reason for the ALJ to grant them little weight.

Assuming *arguendo* that the ALJ erred when he declined to incorporate a limitation on plaintiff's interaction with supervisors into this RFC finding, that error was harmless, since the jobs identified by the vocational expert were unskilled positions which do not involve more than occasional interaction with supervisors in any event. *See Bistoff v. Colvin*, 2017 U.S. Dist. LEXIS 99368 at *14-*15 (W.D.N.Y. 2017) (no error in ALJ's finding that a limitation to occasional contact with others has little or no effect on the occupational base for unskilled jobs, as unskilled jobs typically involve dealing primarily with objects, rather than with data or people); *Karam v. Colvin*, 2015 U.S. Dist. LEXIS 81181 at *26 (W.D.N.Y. 2015) (no error in ALJ's conclusion that, "a limitation to occasional contact with supervisors has little to no effect on the occupational base" of unskilled work) (internal quotation marks omitted). *See generally Gilliam v. Commissioner*, 2018 U.S. Dist. LEXIS 152201 (S.D.N.Y. 2018); *Clark v. Commissioner*, 2016 U.S. Dist. LEXIS 176908 (S.D.N.Y. 2016); *Wilson v. Colvin* 2016 U.S. Dist. LEXIS 133436 (W.D.N.Y. 2016).

In general, moderate nonexertional limitations are sufficiently accommodated where a plaintiff is limited to performing simple work with avoidance of stressors such as production pace work, and limited interaction with coworkers and the public. Here, the limitations imposed by the ALJ are appropriate to accommodate plaintiff's moderate limitations in attention and concentration, relating adequately with others, and appropriately dealing with stress. *See Landers*

*v. Colvin*, 2016 U.S. Dist. LEXIS 41117 at \*11-\*12 (W.D.N.Y. 2016). The ALJ further utilized a vocational expert to determine that plaintiff could perform two positions, both of which are at the "unskilled" level. *Accord Abar v. Colvin*, 2016 U.S. Dist. LEXIS 43205 at \*15 n.8 (N.D.N.Y. 2016) ("courts have found that, 'when medical evidence demonstrates that a claimant can engage in simple routine tasks or unskilled work despite limitations in concentration, persistence, and pace, limiting a plaintiff to unskilled work sufficiently accounts for such limitations'") (quoting *Bartell v. Commissioner*, 2014 U.S. Dist. LEXIS 138078 at \*8 (N.D.N.Y. 2014)).

In summary, while "the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (unpublished opinion). Furthermore, it is "not require[d] that [the] ALJ have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir.1983).

Here, the ALJ discussed the medical opinion evidence provided by each of the treating, consulting and reviewing sources of record, set forth his reasoning for the weight afforded to each opinion, cited and discussed specific evidence in the record which supported his determination, and incorporated appropriate and relevant limitations into his RFC finding. As such, I do not find that the ALJ improperly substituted his "own expertise or view of the medical proof [in place of] any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

Plaintiff also argues that Dr. Luna's opinion could not furnish substantial evidence for the ALJ's RFC finding, due to her use of the terms "mild" and "moderate," which plaintiff contends are unduly vague. While reliance on broad terms can erode the ability of an ALJ to rely upon an

7

opinion, here Dr. Luna's use of the terms "mild" and "moderate" occurred in the context of more detailed observations which provided sufficient context and explanation for the terminology used to render them reliable (e.g, "[c]oherent and goal directed . . .full range and appropriate in speech and thought content . . . able to count to 5 . . . able to recall 3 objects immediately, but only 2 out of the 3 after a 5-minute delay . . . "). (Dkt. #8 at 326-28).

Plaintiff also argues that the ALJ erred in evaluating plaintiff's credibility, when he determined that plaintiff's testimony concerning the intensity, persistence and limiting effects of his symptoms was not entirely credible. An ALJ "may discount plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and [claimant's] own activities during the relevant period." *Lovell v. Colvin*, 137 F.Supp.3d 347 (W.D.N.Y. 2015) (quoting *Wischoff v. Astrue*, 2010 U.S. Dist. LEXIS 37961, at *17 (W.D.N.Y. Apr. 16, 2010)).

Here, the ALJ found that plaintiff's testimony describing debilitating self-isolation, lack of ability to maintain attention, violent outbursts, and total inability to get along with others, was inconsistent with the evidence of record, which included plaintiff's work history, treatment records showing improvement of his psychological symptoms, plaintiff's success with therapy and active participation in Alcoholics Anonymous ("AA"), and plaintiff's own prior self-assessment describing his social life, participation in community activities, ability to relax, personal relationships, and self-esteem as "excellent," and identifying working with others and helping people among his strengths. (Dkt. #8 at 33, 262). The Court concurs that plaintiff's activities of daily living undermine his claim of disabling symptoms.

I have considered the rest of plaintiff's claims, and find them to be without merit.

**CONCLUSION**

For the forgoing reasons, I find that the ALJ's decision was supported by substantial evidence, and was not based on legal error. The plaintiff's motion for judgment on the pleadings remanding the matter (Dkt. #11) is denied, the Commissioner's cross motion for judgment on the pleadings (Dkt. #15) is granted, and the Commissioner's decision that plaintiff is not disabled is affirmed in its entirety.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      May 3, 2019.